UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Integrity Dominion Funds, LLC, | Civ. No. 12-254 (RHK/JSM) |
| Plaintiff, | |
| | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| Lazy Deuce Capital Co., LLC, *et al.*, | |
| Defendants. | |

---

Lucas J. Thompson, Aaron D. Hall, Twin Cities Law Firm, LLC, Minneapolis, Minnesota, for Plaintiff.

Brian L. McMahon, McMahon Law Firm LLC, Saint Paul, Minnesota, for Defendants Lazy Deuce Capital Co., LLC, Lazy Deuce Development Co., LLC, Semita Partners LLC, and Frank W. Delahanty, III.

Robert M. Gardner, Gardner Law Office, Burnsville, Minnesota, for Defendant Brent Johnson.

---

## INTRODUCTION

This case arises out of investments Plaintiff Integrity Dominion Funds, LLC ("Integrity"), a private investment fund, made with Defendant Lazy Deuce Capital Co., LLC ("Lazy Deuce"), an investment company. According to the Amended Complaint, Lazy Deuce's principals Brian Baldwin and Brent Johnson pitched investment opportunities to Thomas Barrett and George Bakalov, principals of Integrity. They presented Lazy Deuce as possessing unique experience in securing hard-to-value collateral and financing lawsuits for profit, and Defendant Frank W. Delahanty III, Lazy

Deuce's chief compliance officer, attested to the company's compliance with regulations. Integrity invested in Lazy Deuce through several short-term, high-interest loans. Lazy Deuce, in turn, invested that money in a fund controlled by Dblaine Capital, LLC ("Dblaine"), on the condition that Dblaine channel some of the funds to Defendant Semita Partners LLC ("Semita"), a niche investment company. Semita funneled the money back to Lazy Deuce, which disbursed the funds to its principals.

Shortly thereafter, Integrity discovered that Baldwin had left Lazy Deuce and started a new investment company. At roughly the same time, Lazy Deuce defaulted on its loans with Integrity. Integrity then brought the instant action, asserting various fraud-based claims. Presently before the Court are two Motions to Dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6) – one by Delahanty and Semita, and one by Johnson. For the reasons that follow, the former Motion will be granted and the latter Motion will be granted in part and denied in part.

## BACKGROUND

Integrity is a small private investment fund incorporated in Delaware and based in Florida. (Am. Compl. ¶ 1.) Lazy Deuce is a Minnesota corporation specializing in high-interest, short-term loans. (Id. ¶ 2.) Baldwin and Johnson are principals of Lazy Deuce. (Id. ¶¶ 5-6.) Baldwin is also a principal of Semita (id. ¶ 5), and Delahanty is the chief compliance officer of both Lazy Deuce and Semita (id. ¶ 7).

According to the Amended Complaint, Baldwin and Johnson presented Lazy Deuce to Barrett and Bakalov, two of Integrity's officers, as a unique investment firm specializing in securing hard-to-value collateral for short-term, high-interest loans and

financing lawsuits. (Id. ¶¶ 19-20.) Johnson told Barrett that these lawsuits provided the bulk of Lazy Deuce's funding. (Id. ¶ 27.) Baldwin and Johnson represented that Lazy Deuce only lent money when it could secure multiple times the amount of its investment with collateral that it could easily liquidate. (Id. ¶¶ 23, 25.) They also represented that Lazy Deuce did not have to fear that its borrowers would default because it had both (a) excellent collateral in its borrowers and (b) a large pool of reserve capital with which it could pay its investors. (Id. ¶¶ 24, 28.) It remains largely unclear who said what exactly, and to whom. (See id. ¶¶ 19-29.) Relying on these representations, Integrity made several short-term, high-interest loans to Lazy Deuce totaling $2,350,000 (between November 12, 2010 and May 26, 2011). (Id. ¶¶ 38, 45-46, 64, 90, 95.)

March 10, 2011 Meeting

Throughout their relationship, Lazy Deuce's principals met with Integrity's principals regarding the safety of Lazy Deuce's operations. (Id. ¶ 52.) One such meeting occurred on March 10, 2011, when Barrett and Bakalov met with Baldwin, Johnson, and Delahanty. (Id. ¶ 53.) Integrity specifically inquired whether Lazy Deuce's loans to Dblaine, an investment-advisory company, presented any risks to Integrity. (Id. ¶ 54.) Lazy Deuce's representatives stated that the company had a $2 million lien on Dblaine's assets, reassured Integrity that these liens and Lazy Deuce's reserve pool protected its interests, and "claimed that Delahanty ensure[d] the compliance and integrity of [Lazy Deuce's] lending activities." (Id. ¶¶ 55-59.) One Integrity representative asked if any scenario existed in which Integrity would not get its money back, and "Baldwin, Johnson, and Delahanty answered 'no.'" (Id. ¶¶ 61-62.) Although this meeting was recorded,

Integrity has not submitted a transcript indicating what was said by each of the Lazy Deuce representatives.

### Fallout

According to the Amended Complaint, Lazy Deuce was borrowing from Integrity at 3% to 4% monthly interest and lending money to Dblaine at 15% to 18% annual interest.[1] (Id. ¶ 70; see also id. Ex. F.) Almost all of Lazy Deuce's investment capital was invested in Dblaine. (Id. ¶ 68.) As a condition of its loans to Dblaine, Lazy Deuce required Dblaine to invest in Semita, a "niche investment company" incorporated in 2010 "by several principals and agents of Lazy Deuce, including Baldwin and Delahanty." (Id. ¶¶ 4, 72.) The Amended Complaint alleges that when Dblaine tried to liquidate its investment in Semita, it learned that Semita had funneled its money back to Lazy Deuce, which had distributed it to Lazy Deuce's owners. (Id. ¶¶ 74-75.) Around the same time, Lazy Deuce defaulted on more than $1,500,000 in loans from Integrity. (Id. ¶¶ 64, 76.)

Just before this default, Baldwin left Lazy Deuce and started another investment company that claimed to be "powered by Lazy Deuce Development" and "copyrighted[2] by Lazy Deuce." (Id. ¶¶ 78-79.) Integrity alleges that Baldwin and Johnson continued to operate in tandem, pocketing Integrity's money and moving to other investment schemes under the new company's banner. (Id. ¶ 80.)

---

[1] The obvious tenor of these allegations is that it would have been impossible for Lazy Deuce to make money using this investment plan.

[2] It is unclear what is meant by "copyrighted."

Integrity filed the instant action on January 31, 2012, asserting claims against Lazy Deuce, Lazy Deuce Development, Semita, Johnson, Baldwin, and Delahanty for (I) breach of contract, (II) fraudulent misrepresentation, (III) negligent misrepresentation, (IV) deceptive trade practices in violation of Minn. Stat. § 325D.44, (V) fraud in connection with the sale of securities in violation of Minn. Stat. Chapter 80A, (VI) fraud in connection with the sale of securities under § 10(b) of the Securities Exchange Act of 1934, (VII) fraud in connection with the sale of securities under § 12 of the Securities Act of 1933, (VIII) RICO claims under 18 U.S.C. §§ 1962 and 1964, (IX) fraudulent transfer under Minn. Stat. §§ 513.44 and 513.45, (X) alter-ego and piercing the corporate veil, and (XI) joint liability. Johnson now moves to dismiss Claims II, III, V, VI, VII, and VIII against him (Doc. No. 9), and Defendants Semita and Delahanty move to dismiss all of Integrity's claims (Doc. No. 18). The issues have been fully briefed, the Court heard oral argument on June 6, 2012, and the Motions are now ripe for disposition.

## STANDARD OF DECISION

The Supreme Court set forth the standard for evaluating a Rule 12(b)(6) motion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 547. A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555; accord Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Rather, the complaint must set forth sufficient facts to "nudge[] the[] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Stated differently, the plaintiff must "assert facts that affirmatively and plausibly suggest that [he] has the right he claims . . . , rather than

facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citing Twombly, 550 U.S. at 554–57).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising from the complaint must be interpreted in the light most favorable to the plaintiff. Twombly, 550 U.S. at 554-56. A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. at 556. "Ultimately, evaluation of a complaint upon a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

In addition, the gravamen of the instant Motions is that the Amended Complaint fails to satisfy the strictures of Federal Rule of Civil Procedure 9(b),[3] which requires "all averments of fraud" to be pleaded with particularity. "Conclusory allegations that a defendant's conduct was fraudulent . . . are not sufficient to satisfy the rule." BJC Health Sys.v. Columbia Cas. Co., 478 F.3d 908, 918 (8th Cir. 2007) (citation omitted). The Rule requires a plaintiff to plead the "circumstances constituting fraud, including such matters

---

[3] Such a challenge "typically is packaged with a motion to dismiss" under Rule 12(b)(6), since Rule 9(b) does not expressly authorize a motion for its enforcement. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civ. 3d § 1300 (2004); accord Kia Motors Am., Inc. v. Autoworks Distrib., Civ. No. 06-156, 2006 WL 2943306, at *3 (D. Minn. Sept. 28, 2006) (Frank, J.).

6

as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Id. (quoting Fed. R. Civ. P. 9(b) and Abels v. Farmers Commodity Corp., 259 F.3d 910, 920 (8th Cir. 2001)); accord United States *ex rel.* Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003) (complaint must identify the "who, what, where, when, and how" of alleged fraud). "The level of particularity required depends on, *inter alia*, the nature of the case and the relationship between the parties." BJC Health Sys., 478 F.3d at 917 (citing Payne v. United States, 247 F.2d 481, 486 (8th Cir. 1957)). Where a plaintiff alleges a systematic perpetration of fraud over an extended period of time, the plaintiff need not allege the specific details of every fraudulent act, but still "must allege some representative examples of the fraudulent conduct with particularity." Allstate Ins. Co. v. Linea Latina De Accidentes, Inc., 781 F. Supp. 2d 837, 846 (D. Minn. 2011) (Ericksen, J.) (citing United States *ex rel.* Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557 (8th Cir. 2006)).

## ANALYSIS

Johnson seeks dismissal of (a) Claims II, III, V, VI, and VII for not satisfying Rule 9(b)'s particularity requirement, and (b) Claim VIII because Integrity cannot prove that he engaged in a pattern of racketeering. Delahanty and Semita move to dismiss (a) Claims II-IX for failing to satisfy Rule 9(b)'s particularity requirement, and (b) Claims II, III, IV, V, VI, VII, VIII, X, and XI for failing to state a claim upon which relief can be granted. In its Response Memorandum, Integrity has agreed to dismiss Claim III

(negligent misrepresentation). (Mem. in Opp'n at 17.) The remaining claims are addressed below.

## I. Fraud Pleading Requirement

A plaintiff alleging a long-term fraudulent scheme must "provide *some* representative examples of [the defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors" in order to "enable [the defendants] to respond specifically to [the plaintiff's] allegations." St. Luke's Hosp., 441 F.3d at 557 (emphasis in original). Defendants argue that Integrity's fraud claims should be dismissed because the Amended Complaint does not satisfy this particularity requirement as it fails to identify who uttered the allegedly fraudulent statements. Specifically, Johnson makes this argument with respect to Claims II, V, VI, and VII, and Delahanty and Semita make it with respect to Claims II-IX.[4] Integrity responds that it alleges a systematic practice of Defendants' fraudulent scheme, using the March 10 meeting as a representative example, and therefore Rule 9(b) has been satisfied.

Where, as here, a case involves multiple defendants, "the complaint should inform each defendant of the nature of [its] alleged participation in the fraud." Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 778 (7th Cir. 1994); accord Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); Weimer v. Int'l Flavors & Fragrances, Inc., 240 F.R.D. 431, 437 (N.D. Iowa 2007) ("[W]here a

---

[4] It is undisputed that Rule 9(b)'s heightened pleading requirement applies to each of these claims.

plaintiff's complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiff must take care to identify which of them was responsible for the individual acts of fraud."). Otherwise, a defendant could only guess which allegations in the complaint were pleaded against him, rendering it difficult (if not impossible) to adequately frame a response and eviscerating Rule 9(b)'s requirement to plead fraud with particularity. See Bank of Montreal v. Avalon Capital Grp., Inc., 743 F. Supp. 2d 1021, 1028 (D. Minn. 2010) (Davis, C.J.).

Throughout the Amended Complaint, Integrity alleges that Lazy Deuce or its representatives made particular representations, with almost no mention of the individual speakers. (See, e.g., Am. Compl. ¶¶ 31, 34, 35, 39.) It uses the March 10 meeting as a specific example, alleging that "*each* of the Defendants present at [the] meeting shared complete culpability for each false statement that they either uttered or silently let stand, knowing its falsehood." (Mem. in Opp'n at 6 (emphasis in original).) Even though this general allegation provides some notice of the core of Integrity's claims against Defendants, see Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 646 (8th Cir. 1995), it ignores that the Amended Complaint also contains numerous allegations of fraudulent statements that have not been attributed to any specific Defendant. Only once does Integrity come close to identifying a speaker at the March 10 meeting: in response to Barrett's question whether there existed any scenario in which Integrity would not get repaid from Lazy Deuce, "Baldwin, Johnson, and Delahanty answered 'no.'" (Am. Compl. ¶ 62.) Despite Integrity's attempt to specify those three Defendants, it remains unclear whether it alleges that each of them said "no" individually

9

or whether they said it as a unit, and thus it is equally unclear what role each Defendant played in the fraud. In other words, Integrity "sets forth numerous factual allegations in the . . . complaint; however, given [its] failure to differentiate between defendants, that numerosity actually hinders clarity." Haskin v. R.J. Reynolds Tobacco Co., 995 F. Supp. 1437, 1440 (M.D. Fla. 1998). Because Integrity's multiple allegations lack the careful specificity that Rule 9(b) requires,[5] the Court concludes that its fraud-based claims are inadequately pleaded.[6]

Defendants also argue that Integrity's claims should be dismissed with prejudice. Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend. See, e.g., Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1435 (3d Cir. 1997); Waitt v. Speed Control, Inc., No. C-00-4060, 2002 WL 1711817, at *25 (N.D. Iowa June 28, 2002). Nothing in the record persuades the Court that Integrity has acted in bad faith, and it is not clear at present that allowing further amendment would be futile. See, e.g., Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001). In keeping with the liberal precepts of the Federal Rules, the Court will grant Integrity leave to amend.

## II.   Integrity's RICO Claim Against Johnson

Johnson argues that Integrity's RICO (Racketeer Influenced and Corrupt Organizations) claim (Claim VIII) should be dismissed because Integrity cannot prove a

---

[5] Integrity's failure to differentiate among Defendants is particularly confusing in light of its acknowledgement at oral argument that it possesses an audio recording of the March 10 meeting. It would be simple to transcribe the recording and attach it as an exhibit to the Amended Complaint, specifically denoting who said what.

[6] Because Claims II-IX fail to meet Rule 9(b)'s particularity requirement, the Court need not opine at this juncture whether relief can be granted on those claims.

pattern of racketeering. Under § 1962 of the RICO Act, it is "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To adequately plead a RICO claim, Integrity must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009) (internal quotation omitted). "[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis in original); Lange v. Hocker, 940 F.2d 359, 361 (8th Cir. 1991). Whether a threat of continued activity exists depends on the specific facts of each case, but "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." H.J. Inc., 492 U.S. at 242; see also Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (8th Cir. 1993) (finding that an alleged scheme spanning ten or eleven months did not satisfy the "substantial period" requirement for a RICO pattern). Johnson argues that because the loans in question occurred over a six-and-a-half month period and the association-in-fact of Johnson, Lazy Deuce, and the other Defendants has ended, no pattern of racketeering exists. The Court disagrees.

    According to the Amended Complaint, Baldwin and Johnson have been engaged in a long-standing arrangement that involves setting up one company, eliciting money from clients, dumping the money into another company under their control, and closing

down the first company. For instance, Integrity alleges that soon after Lazy Deuce defaulted, Baldwin started a new investment company called "Stone Path Financial" through which he and Johnson continue to operate. Integrity also alleges that Baldwin and Johnson have been engaged in a similar enterprise using various corporate forms for about three years, and are planning to run the same scheme going forward. (See Am. Compl. ¶¶ 48-51, 79-80.) This fits the type of long-term criminal conduct that concerned Congress when it adopted the RICO statute. See, e.g., H.J. Inc., 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct."). These allegations suffice to adequately plead a civil RICO claim, and accordingly Johnson's Motion to dismiss this claim will be denied.

### III.  Piercing the Corporate Veil and Joint-Liability Claims

Delahanty and Semita argue that Integrity's last two claims, for "Alter-Ego and Piercing of the Corporate Veil" (Claim X) and "Joint Liability" (Claim XI), should be dismissed for failing to state a claim. Neither of these "claims" is an independent cause of action; rather, each is a means by which a plaintiff can impose liability on a defendant who did not directly cause the plaintiff's harm. See Victoria Elevator Co. v. Meriden Grain Co., 283 N.W.2d 509, 512 (Minn. 1979) (disregard of the corporate entity requires not only that the corporation functioned as a mere instrumentality of the individuals sought to be held personally liable, but also that an element of injustice or fundamental unfairness exists); Cenveo Corp. v. S. Graphic Sys., Inc., 784 F. Supp. 2d 1130, 1136 (D. Minn. 2011) (Tunheim, J.) (plaintiffs seeking to impose joint and several liability must

prove an underlying tort claim). Accordingly, the Court concludes that Claims X and XI must be dismissed with respect to Delahanty and Semita for failing to state a claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1. Claim III (negligent misrepresentation) is **DISMISSED WITH PREJUDICE**;

2. Delahanty's and Semita's Motion to Dismiss (Doc. No. 18) is **GRANTED**, and Claims II, III, IV, V, VI, VII, VIII, IX, X, and XI with respect to those Defendants are **DISMISSED WITHOUT PREJUDICE**;

3. Johnson's Motion to Dismiss (Doc. No. 9) is **GRANTED IN PART** and **DENIED IN PART**, and Claims II, V, VI, and VII with respect to Johnson are **DISMISSED WITHOUT PREJUDICE**; and

4. Integrity may file an Amended Complaint addressing the deficiencies outlined above within 20 days of this Order.[7]

Date:  July 12, 2012                                s/Richard H. Kyle
                                                    RICHARD H. KYLE
                                                    United States District Judge

---

[7] The Court reminds Integrity that although it may replead its claims and do so with particularity, Fed. R. Civ. P. 9(b), that does not grant it license to make a Second Amended Complaint prolix or unnecessarily lengthy. See Fed. R. Civ. P. 8(a)(2). A Second Amended Complaint that fails to meet Rule 9(b)'s particularity requirement would leave the Court disinclined to grant another opportunity to replead. See also Fed. R. Civ. P. 11.