UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Integrity Dominion Funds, LLC, | Case No.:     12-254 RHK/JSM |
| Plaintiff, | |
| v. | |
| Lazy Deuce Capital Co., LLC; Semita Partners LLC; Taurus Holdings, LLC; Lex Acquisition Group, LLC; Brent Johnson (third-party plaintiff); Brian S. Baldwin; Frank W. Delahanty III (third-party plaintiff); Kenneth Haglind; Steve Haglind; Todd Bassinger; and Jeff Cahill, | |
| Defendant. | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS TAURUS HOLDINGS, LLC, LEX ACQUISITION GROUP, LLC,
STEVE HAGLIND, TODD BASSINGER AND JEFF CAHILL**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

PROCEDURAL POSTURE ....................................................................................... 2

THE ALLEGATIONS IN THE THIRD-AMENDED COMPLAINT .......................... 5

ARGUMENT ............................................................................................................ 9

I.      STANDARD FOR A MOTION TO DISMISS. ........................................... 9

II.     THIS COURT LACKS JURISDICTION OVER MOVANTS……….......11

      A.     Since There Are No Sufficient Allegations of Diversity in this
Action, Integrity Is Dependent on Its RICO Claim to Confer
Subject Matter Jurisdiction upon the Court. ................................... 11

      B.     Integrity's RICO Count against Steve Haglind, Bassinger and
Cahill Fails to State a Claim on Which Relief Can Be
Granted. .......................................................................................... 13

           1.     Integrity Has Failed to Plead the Fraud Underlying Its
RICO Claim with Sufficient Specificity to Survive a
Motion to Dismiss. ............................................................... 13

           2.     Integrity Has Failed to Plead Adequate Facts
Demonstrating Sufficient Duration of Any Purported
Criminal Enterprise Supposed to Have Involved Steve
Haglind, Bassinger or Cahill. ................................................ 16

           3.     Integrity Has Failed to Plead with Sufficient
Particularity the Purported Roles that Steve Haglind,
Bassinger and Cahill Had Vis-à-Vis any Alleged
Criminal Enterprise. ............................................................. 17

           4.     Integrity Has Failed to Adequately Plead that Movants
Controlled an Enterprise. ...................................................... 19

III.    INTEGRITY'S FRAUDULENT TRANSFER CLAIM AGAINST
MOVANTS FAILS TO STATE A CLAIM ON WHICH RELIEF
CAN BE GRANTED. ............................................................................. 20

IV.    INTEGRITY HAS FAILED TO STATE A CLAIM FOR BREACH
OF CONTRACT AGAINST MOVANTS, WHO WERE

STRANGERS TO ANY AGREEMENT ALLEGED IN THE
COMPLAINT............................................................................................22

V.      INTEGRITY'S FRAUD CLAIM FAILS TO STATE A CLAIM ON
WHICH RELIEF CAN BE GRANTED AGAINST MOVANTS..............27

CONCLUSION ........................................................................................................31

## INTRODUCTION

Plaintiff Integrity Dominion Funds, LLC ("Integrity") commenced this action against Lazy Deuce Capital Co., LLC ("Lazy Deuce"), Semita Partners LLC ("Semita"), Brian S. Baldwin ("Baldwin"), Brent Johnson ("Johnson") and Frank W. Delahanty III ("Delahanty") almost 14 months ago.  Integrity's claims against those Defendants relate to unpaid loans that Integrity made to Lazy Deuce, and to purported fraudulent inducement to make those loans by Baldwin, Johnson and Delahanty as Lazy Deuce principals.  In December 2012, Integrity sought leave to file a Third Amended Complaint to, among other things, assert claims against Steve Haglind, Todd Bassinger ("Bassinger"), Jeff Cahill ("Cahill"), Taurus Holdings, LLC ("Taurus") and Lex Acquisition Group, LLC ("Lex") (collectively, "Movants").[1]  Despite having had nearly one year to conduct discovery regarding its claims and uncover any purported misconduct by Movants, Integrity's allegations against them are scant, conclusory, and exactly the breed of "threadbare recital" that is not sufficient to state a claim on which relief can be granted under Rule 12(b)(6), let alone Rule 9(b), of the Federal Rules of Civil Procedure. The allegations in the Complaint do not purport to demonstrate that Movants are parties to any contract with Integrity.  They do not even purport to demonstrate that Movants had any communications with Integrity.  Integrity's efforts to join Movants in this lawsuit appear to have been motivated more by a desire to find potential deep pockets than by a legitimate belief that Movants played any role in contributing to Integrity's alleged harm.

---

[1] Steve Haglind, Bassinger and Cahill will sometimes be referred to herein as the "Individual Movants."

Since Integrity has failed to state a claim against Movants on which relief can be granted, its Complaint as to them should be dismissed in its entirety, with prejudice.

## PROCEDURAL POSTURE

Integrity filed an action against Lazy Deuce, Semita, Baldwin, Johnson and Delahanty on January 31, 2012. (*See* Compl. dated Jan. 31, 2012 [Dkt. #1].) The original Complaint alleged claims for breach of contract, fraud, negligent misrepresentation, deceptive trade practices, securities law violations, RICO violations, and fraudulent transfer, among others. (*See id.* at ¶¶ 82-137.) Before the original Defendants answered or otherwise responded to the Complaint, Integrity filed a First Amended Complaint. (*See* First Am. Compl. dated Feb. 28, 2012 [Dkt. #4].) Delahanty, Semita and Johnson thereafter brought motions to dismiss. (*See* Def. Brent Johnson's Rules 9 and 12(B)(6) Mot. to Dismiss dated Feb. 29, 2012 [Dkt. #9]; Defs. Semita Partners LLC and Frank W. Delahanty III's Mot. to Dismiss Pl.'s Claims Against Them dated Apr. 2, 2012 [Dkt. 12].) After reviewing the briefing and hearing oral argument, this Court issued an Order granting in large part the motions of Delahanty, Semita and Johnson. (Mem. Opinion and Order dated July 12, 2012 [Dkt. #29] ("Order").) Specifically, the Court dismissed Integrity's negligent misrepresentation claim with prejudice; dismissed without prejudice Integrity's claims as to Delahanty and Semita for fraudulent misrepresentation, deceptive trade practices, securities fraud under Minn. Stat. Chapter 80A, securities fraud under Section 10(b) of the Securities Exchange Act, securities fraud under Section 12 of the Securities Act, RICO violations, fraudulent transfer, alter ego, and joint liability; and dismissed without prejudice Integrity's claims

as to Johnson for fraudulent misrepresentation, securities fraud under Minn. Stat. Chapter 80A, securities fraud under Section 10(b) of the Securities Exchange Act, and securities fraud under Section 12 of the Securities Act.  (*Id.* at 13.)

Integrity thereafter filed a Second Amended Complaint against the same group of Defendants, asserting claims for breach of contract, fraud, securities law violations, RICO violations and fraudulent transfer.  (Second Am. Compl. dated Aug. 1, 2012 [Dkt. #30] ("2d Am. Compl.").)  In answering the Second Amended Complaint, Delahanty asserted a cross-claim against Baldwin seeking indemnification in the event that Semita or Delahanty were to be found liable to Integrity.  (*See* Answer and Cross Claim and Third-Party Compl. of Def. Frank W. Delahanty, III dated Aug. 31, 2012 [Dkt. #35] at Cross Claim ¶¶ 1-6.)  Delahanty also pleaded in Jeff Hagen ("Hagen") and asserted a similar claim against him for indemnification.  (*Id.* at Third-Party Claims ¶¶ 1-6.) Johnson thereafter likewise asserted a cross-claim against Baldwin for indemnification. (*See* Def. Brent Johnson's Answer and Crossclaim to Pl.'s Second Am. Compl. dated Sept. 17, 2012 [Dkt. #36] at Crossclaim 1-3.)

On December 20, 2012, nearly a year after initiating this action and a mere four months prior to the close of discovery, Integrity moved for leave to file yet a third amended complaint.  (*See* Mot. to Amend Compl. dated Dec. 20, 2012 [Dkt. #45]; *see also* Pretrial Scheduling Order dated Oct. 19, 2012 [Dkt. #41] ("Scheduling Order).) Integrity alleged for the first time that Kenneth Haglind, Steve Haglind, Bassinger and Cahill "were officers and directors of Lazy Deuce who knew about the scheme, contributed to its execution, and failed to disclose its true nature to Integrity Dominion."

(Pl.'s Mem. in Supp. of Mot. to Amend Compl. dated Dec. 20, 2012 [Dkt. #47] ("Amend. Mem.") at 2.)  Integrity sought to add to its already twice amended complaint claims against Kenneth Haglind, Steve Haglind, Bassinger and Cahill "on theories of piercing the corporate veil, fraud by omission, aiding and abetting fraud, and RICO."  (*Id.* at 3.) Integrity also sought to plead in Lex and Taurus "on theories of aiding and abetting fraud and piercing the corporate veil."  (*Id.*)  The purported basis for such claims against Lex and Taurus is that those entities "were represented to have been a part of Lazy Deuce by Defendant Brent Johnson in order to induce investment in Lazy Deuce" when they "were in fact operations of other Brent Johnson Companies."  (*Id.*)  The motion to file another amended complaint – through which Integrity sought to voluntarily dispose of its claims for alleged violation of securities law and the Minnesota Deceptive Trade Practices Act (*see id.*) – was not opposed by any of the then-Defendants.  (*See* Order dated Jan. 15, 2013 [Dkt. #52].)  The Court accordingly granted the motion without conducting a hearing, thus granting Integrity leave to serve its proposed Third Amended Complaint. (*Id.*)

After an initial and ineffective attempt at service, Integrity obtained a valid Amended Summons dated Jan. 31, 2013 and served Lex, Taurus, Steve Haglind, Bassinger and Cahill with the Complaint in early February.  (*See* Third Am. Compl. dated Dec. 20, 2012 [Dkt. #53] (hereinafter, the "Complaint"); Am. Summons dated Jan. 31, 2013 [Dkt. #56].)  Movants now move to dismiss the claims asserted against them in the Third Amended Complaint.

## THE ALLEGATIONS IN THE THIRD-AMENDED COMPLAINT[2]

Integrity is a Florida-based investment fund operated by three principals, Thomas Barrett ("Barret"), George Bakalov ("Bakalov") and H. Chris Poole, through a related entity called Integrity Dominion Capital, LLC.  (Compl. ¶ 16.)  In late 2010, Bakalov had discussions with Hagen regarding making a potential investment in Lazy Deuce.  (*See id.* at ¶¶ 17-18.)  Hagen put Barrett in touch with Johnson, Baldwin and Delahanty.  (*Id.* at ¶ 19.)  Johnson thereafter provided Barrett with promotional materials regarding Lazy Deuce.  (*Id.* at ¶ 20; *see also id.* at ¶¶ 21-30.)  According to the Complaint, those promotional materials discussed Johnson, Baldwin, Delahanty, Hagen and Kenneth Haglind, but they did not identify any of Movants, other than a passing reference to Taurus as being involved with Johnson.  (*See id.* at ¶¶ 21-30.)

After receiving the promotional materials, Integrity's principals maintained contact with Baldwin and Johnson regarding a potential investment in Lazy Deuce, and they informed Integrity about a loan that Lazy Deuce was making to an investment-advisory company called Dblaine Capital, LLC ("Dblaine Capital").  (*Id.* at ¶¶ 31-42.)  The Complaint does not allege that Movants were parties to any such communications relating to Lazy Deuce.  (*See* Compl.)  Satisfied that an investment in Lazy Deuce would

---

[2] Movants dispute virtually all of the allegations regarding Movants in Integrity's Complaint, and are without knowledge or information sufficient to form a belief as to other allegations contained in the Complaint.  For the purpose of this motion only, though, Movants understand that the Court shall assume that the factual allegations alleged in the Complaint are true.  *See E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012) (noting that courts take the facts alleged in a complaint as true on a motion to dismiss, but may disregard mere conclusory statements).

be a sound one, Integrity made its first loan to Lazy Deuce on November 12, 2010.  (*Id.* at ¶ 43.)

On January 31, 2011, Baldwin sent an e-mail to Delahanty, copied to Bakalov, attaching two term sheets relating to Lazy Deuce, its business model, and its projected earnings.  (*Id.* at ¶¶ 48-55.)  The Complaint does not allege that Movants were parties to any such communications relating to Lazy Deuce.  (*See* Compl.)  Again, presumably satisfied that Lazy Deuce presented a sound investment opportunity, Integrity made more loans to Lazy Deuce in the winter and spring of 2011.  (Comp. ¶ 56.)  Those additional loans ranged in principal amounts from $100,000 to $700,000 and totaled $3.55 million. (*Id.* at ¶ 57.)  The loans were all signed by Delahanty, or co-signed by Delahanty and Kenneth Haglind.  (*Id.* at ¶ 58.)  The Complaint does not allege that Movants had any role in the negotiation or execution of any loan document.  (*See* Compl.)

The Complaint alleges that during the same period that Integrity was loaning millions of dollars to Lazy Deuce, Barrett was concerned about Johnson's legal entanglements and about Lazy Deuce's ability to repay the loans that Integrity was continuing to make.  (*See* Compl. ¶¶ 57, 59-86.)  In particular, Barrett was concerned about "how it was profitable for Lazy Deuce to take out loans at high rates at which Integrity Dominion was loaning it money."  (*Id.* at ¶ 59.)  Integrity's principals allege that they sought information relating to the "depth and breadth" of Lazy Deuce's operations "and the overriding safety of Lazy Deuce's lending and investments" from Baldwin, Johnson and Delahanty.  (*See id.* at ¶¶ 66-67.)  Movants were not parties to such communications.  (*See* Compl. ¶¶ 66-86.)

6

By mid-summer 2011, Lazy Deuce had defaulted on over $1,500,000 in payments to Integrity.  (*Id.* at ¶ 90.)  The Complaint alleges that Integrity thereafter discovered that many of the representations made by Baldwin, Johnson and Delahanty regarding Lazy Deuce had been false.  (*See id.* at ¶¶ 89-116.)  Alleged fraudulent statements purportedly communicated by the original Defendants included:

- Lazy Deuce had a "pool" of reserve funds.  (*Id.* at ¶ 91.)

- Lazy Deuce was not a "pass through" entity in the sense that it tied lenders' funds directly to borrowers, such as Dblaine Capital.  (*Id.* at ¶ 92.)

- Lazy Deuce had ample collateral, including collateral or security interests in Dblaine Capital.  (*Id.* at ¶¶ 93, 96.)

- Lazy Deuce had completed an audit with a major accounting firm.  (*Id.* at ¶ 94.)

- Dblaine Capital was purchasing $50 million in assets with $1 million.  (*Id.* at ¶ 95.)

- Lazy Deuce had itself previously invested in lawsuits, including the Converse bankruptcy proceeding.  (*Id.* at ¶ 97.)[3]

- Lazy Deuce had investments secured by gold.  (*Id.* at ¶ 99.)

Not one of these statements is alleged to have been communicated by any Movant.  (*See*, *generally*, Compl.)

---

[3] The Complaint alleges that other entities related to Johnson, including Movants Lex and Taurus, had invested in lawsuits, and Johnson falsely attributed their actions to Lazy Deuce.  (Compl. ¶ 98.)  There is no allegation that Johnson was an officer or member of Lex or Taurus, or that he made such representations in any capacity as an officer or member of Lex or Taurus; rather, the allegations demonstrate that to the extent Johnson purportedly made such statements, he was doing so in his capacity as a principal of Lazy Deuce.  (*See* Compl. ¶¶ 55, 84, 98.)  There are no allegations that Lex or Taurus made any representation at all.  (*See* Compl.)

Contrary to the original Defendants' allegedly false representations, the Complaint alleges, "almost all of Lazy Deuce's funds at any given time were tied up with Dblaine Capital in an investment scheme" that is currently the subject of an SEC investigation, no part of which is alleged to center on Movants.  (*See id.* at ¶ 100.)  The Complaint alleges the machinations of a "Ponzi scheme," which was supposedly "widely understood" at Lazy Deuce and created by Baldwin with the knowledge and assistance of others, including the original Defendants and, in conclusory fashion, the Individual Movants. (See *id.* at ¶¶ 122-141.)  The scheme purportedly worked as follows:  Lazy Deuce would receive money from Integrity and promptly "pass it through" to Dblaine Capital, which would in turn invest in Semita, which would funnel funds back to Lazy Deuce.  (*Id.* at ¶¶ 102, 107-112.)  The Complaint alleges that this lending and investment arrangement was "a money-losing machine for Lazy Deuce" that "kept Lazy Deuce's finances in a perpetual state of insolvency."  (*Id.* at ¶ 114.)

The Complaint alleges that the "Ponzi scheme" between Lazy Deuce, Dblaine Capital and Semita "fell apart in June 2011 when [Dblaine Capital] was unwilling or unable to continue directing the corresponding investment in Semita . . . ."  (*Id.* at ¶ 115.) Lazy Deuce allegedly defaulted on three loans totaling $1.5 million as a result.  (*Id.* at ¶ 116.)  This was not before several of Defendants purportedly benefited from the "scheme" though.  (*See id.* at ¶¶ 117-120.)  The Complaint alleges that Baldwin took $125,000 from Semita; that Johnson received a personal loan of $100,000 from Lazy Deuce, which was forgiven; and that Kenneth Haglind and Baldwin took unreasonable

salaries.  (*Id.* at ¶¶ 117-118, 120.)[4]  The Complaint further alleges that "Lazy Deuce was used to conduct a variety of transactions benefitting several of Johnson's other companies, in which Steve Haglind, Bassinger, and Cahill were involved," although it wholly fails to specify which companies, exactly how such companies were supposed to have benefited, or whether Steve Haglind, Bassinger and/or Cahill is supposed to have personally benefited.  (*Id.* at ¶ 119.)  Regardless, the Complaint alleges, Lazy Deuce and Semita were mere facades for Defendants.  (*See id.* at ¶¶ 147-151.)

## ARGUMENT

### I.   STANDARD FOR A MOTION TO DISMISS.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted . . . ."  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, a complaint must allege facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do . . . ."  *Id.*  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of any 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

---

[4] While previous versions of the Complaint included allegations regarding funneling money "from Semita back to Lazy Deuce and from Lazy Deuce to Johnson, Baldwin, and Delahanty individually," such allegations were dropped from the current Complaint.  (*See, e.g.*, 2d Am. Compl. ¶ 112.)

In evaluating a motion to dismiss, the Court accepts a complaint's factual allegations as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a plausible claim for relief and survive a motion to dismiss. *Id.*; *see also McAdams v. McCord*, 584 F.3d 1111, 1113-15 (8th Cir. 2009) (dismissing complaint because lack of specific factual allegations defeated plausibility of plaintiffs' claim). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility" and, therefore, must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Additionally, heightened pleading standards apply to claims for fraud. Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). In other words, "[i]n order to meet 9(b)'s heightened pleading requirement, a plaintiff must set forth the who, what, when, where, and how" of the

claim. *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000)

(internal quotation omitted); *see also Joshi*, 441 F.3d at 556.

## II.   THIS COURT LACKS JURISDICTION OVER MOVANTS.

### A.   Since There Are No Sufficient Allegations of Diversity in this Action, Integrity Is Dependent on Its RICO Claim to Confer Subject Matter Jurisdiction upon the Court.

It is black letter law that this Court has jurisdiction over the parties only if there is

(a) diversity of citizenship and $75,000 in controversy, or (b) federal question jurisdiction

because the action arises under federal law. *See* 28 U.S.C. §§ 1331, 1332.  Integrity did

not plead diversity jurisdiction in this matter.  (*See* Compl.)  Rather, Integrity availed

itself of this forum on the basis of federal question jurisdiction.  (*Id.* at ¶ 14 ("This Court

has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367, because this action

involves claims arising under the laws of the United States and other state-law claims

arising out of the same case or controversy.").[5]

---

[5] Not only did Integrity not invoke diversity for the purposes of its jurisdiction allegation, but the citizenship of Integrity and the corporate Defendants is not adequately pleaded in the Complaint.  Integrity, Lazy Deuce, Semita, Lex and Taurus, for example, are all limited liability companies and are thus "citizen[s] of every state of which one of [their] members is a citizen."  *Key Enters., LLC v. Morgan, Ink Publishing Corp.*, No. 12-2628, 2013 WL 353911, at *1 (D. Minn. Jan. 29, 2013).  The citizenship of those members would need to be properly pleaded in the Complaint to demonstrate the existence of complete diversity.  *See id.* at 1-3 (discussing at length the importance of pleading the citizenship of a limited liability company's members and the impropriety of making such assertions "upon information and belief").  Since Integrity did not make any allegations regarding the citizenship of the limited liability companies – and improperly alleged the citizenship of other Defendants "on information and belief" – it has failed to adequately plead the existence of diversity jurisdiction.  (*See* Compl. ¶¶ 1-7.)  In fact, Integrity has specifically pleaded itself out of diversity jurisdiction by alleging that Bakalov "lives and works in Minnesota . . . ."  (*Id.* at ¶ 17.)

The only claim Integrity has alleged that arises under federal law is its RICO

claim.  (*See* Compl. ¶¶ 154-229.)[6]  That RICO claim is premised entirely on allegations

of wire and mail fraud.  (*See* Compl. ¶ 217 ("Defendants continuously controlled and

operated an enterprise engaged in a pattern of racketeering activity, including wire fraud

and mail fraud.").); *see also* 18 U.S.C. § 1961 (listing acts constituting racketeering

activity).[7]  Integrity is dependent on the continued viability of this RICO claim to ensure

that this this Court maintains jurisdiction.  (*See* Compl. ¶¶ 154-229.)  In the event that the

Court were to dismiss Integrity's RICO claim, as it should for reasons discussed in

Section II(B)-(D) *infra*, the Court should dismiss the entirety of the action so that

Integrity's state law claims may properly be heard by the state court in the event that

Integrity chooses to re-file in that venue.  *Carnegy-Mellon Univ. v. Cohill*, 484 U.S. 343,

350 n.7 (1988) (noting that if federal claims are dismissed, state law claims should

---

[6] That claim is not even alleged against Lex or Taurus.  (Compl. ¶¶ 216-225.)
Integrity's RICO claim is pleaded only "[a]gainst against [*sic*] Lazy Deuce, Baldwin,
Johnson, Delahanty, Kenneth Haglind, Steve Haglind, Todd Bassinger, and Jeff Cahill."
(*See id.*)  The Court should exercise its discretion to decline to exercise supplemental
jurisdiction over Lex and Taurus since the other claims alleged against them predominate
over the RICO claim asserted against other Defendants, and since, as discussed in Section
II(A)-(D) herein, Integrity's RICO claim fails to state a claim on which relief can be
granted against <u>any</u> Defendant, such that the Court should properly dismiss the only
claim over which it has original jurisdiction.  *See* 28 U.S.C. § 1367(c)(2)-(3) (discussing
circumstances under which the Court may decline to exercise supplemental jurisdiction).

[7] In earlier versions of the Complaint, Integrity's RICO claim was also premised
on allegations of securities fraud.  (*See*, *e.g.*, 2d Am. Compl. ¶ 174 ("Defendants
continuously controlled and operated an enterprise engaged in a pattern of racketeering
activity, including wire fraud, mail fraud, and securities fraud.").)  Defendants have since
abandoned their securities fraud claims as not viable.  (*See* Amend. Mem. at 3 ("As the
factual record has developed, it has become clear that claims sounding in securities law . .
. can also be abandoned.").)

generally be dismissed as well because "in the usual case . . . the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (affirming dismissal of state law claims "[a]fter dismissal of the RICO count, the only count over which the district court had original jurisdiction"); *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (affirming district court's dismissal of supplemental state law claim after dismissal of claims over which the district court had original jurisdiction); *Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912, 922 (D. Minn. 2012) ("Because this Court has original jurisdiction over only two of Sebrite's claims – and because those claims have been dismissed – the Court finds that Sebrite's remaining state-law claims should be decided by a state court.").[8]

### B. Integrity's RICO Count against Steve Haglind, Bassinger and Cahill Fails to State a Claim on Which Relief Can Be Granted.

#### 1. Integrity Has Failed to Plead the Fraud Underlying Its RICO Claim with Sufficient Specificity to Survive a Motion to Dismiss.

Rule 9(b) applies to RICO claims based on allegations of mail or wire fraud and "provides that where a plaintiff alleges fraud, the circumstances constituting that fraud must be pled with particularity." *McMaster v. Minn.*, 819 F. Supp. 1429, 1443 (D. Minn. 1993); *see also Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995). "Thus, litigants pleading RICO violations must allege the time, place,

---

[8] Should the Court choose to exercise supplemental jurisdiction, it should dismiss the remaining counts against Movants with prejudice for reasons discussed herein in Sections II(B)-V, *infra*.

and content of all false representations." *McMaster*, 819 F. Supp. at 1443; *see also*

*Lange v. Hocker*, 940 F.2d 359, 362 (8th Cir. 1991) ("In pleading RICO violations, a

litigant must allege the time, place, and content of all false representations.") (quotation

omitted).  Integrity has failed to meet its burden.

As discussed in Section V, *infra*, Integrity has failed to adequately plead even

common law fraud against Movants with the requisite particularity.  Integrity's

allegations of wire and mail fraud purportedly supporting its RICO claim are even

sparser.  Integrity alleges only that "Defendants continuously controlled and operated an

enterprise engaged in a pattern of racketeering activity, including wire fraud and mail

fraud."  (Compl. ¶ 217.)  They fail, however, to even allege which Defendants are

supposed to have engaged in such activity.  *See Murr Plumbing*, 48 F.3d at 1069 (noting

the necessity of pleading "the identity of the person" undertaking in the fraudulent act).

Such "threadbare recitations of the elements of a RICO claim, 'supported by mere

conclusory statements, do not suffice'" to meet the Rule 12 pleading standards under

*Iqbal*, and they certainly do not suffice under the heightened pleading requirements of

Rule 9(b).  *Crest Constr. II*, 660 F.3d at 357-58.

Integrity has utterly failed to allege any instance when Movants fraudulently used

the mail or wire for the purpose of racketeering.  (*See* Compl.)  There is not one

allegation specifically alleging that Steve Haglind, Bassinger or Cahill disseminated false

materials by mail or initiated fraudulent wire transmissions, let alone any allegation

regarding the particular dates, times and contents of such transmissions in a manner that

would satisfy Rule 9(b)'s heightened pleading requirements.  (*See* Compl.)[9]  The present

situation with respect to Movants is like that faced by the Eighth Circuit in *Crest*

*Construction*:

> The Complaint does not identify [the who, what, when, where, and how]
> with respect to a single allegation of mail or wire fraud; in fact the
> Complaint fails to specify a single date with respect to any such allegation.
> The proposed additions are better but still lacking with respect to
> specifically identifying the who, where, when and how of the mail and wire
> fraud, the predicate acts of the RICO claim . . . .

*Crest Constr.*, 660 F.3d at 358 (affirming dismissal of a RICO claim for "fail[ure] to

allege facts sufficient to state a claim to relief that is plausible on its face") (quotation

omitted); *see also Lange*, 940 F.2d at 362 (allegations that defendants "executed their

scheme by contacting the various horse owners through the use of the interstate mail

and/or telephone systems" not enough to survive motion to dismiss); *McMaster*, 819 F.

Supp. at 1443 (dismissing RICO claim under Rule 9(b) where "Plaintiffs have asserted

that the defendants have used the mails and wires to further their allegedly fraudulent

scheme, but have provided no details regarding the alleged violation.").  Integrity has

failed to adequately plead that Movants have participated in a predicate RICO act, and its

---

[9] The closest that Integrity gets to alleging that any of Movants actually
participated in mail or wire fraud are perfunctory allegations regarding e-mail
communications.  (*See*, *e.g.*, Compl. ¶¶ 130 ("Steve Haglind . . . arranged via email and
other means with Welliver and his agents to coordinate the amounts and timing of quid-
pro-quo investment such that Lazy Deuce could repay its lenders and maintain the facade
of profitability and a plausible business model."), 138 ("Johnson was kept informed of
the progress of the negotiations, including being copied on emails of drafts and
discussions between Bassinger and Baldwin.").)  Such perfunctory allegations do not
contain the who, what, where, when and how of any purported mail or wire fraud.  *See
Crest Constr.*, 660 F.3d at 358.

RICO claim (and Complaint) against Steve Haglind, Bassinger and Cahill should be dismissed.

> **2.      Integrity Has Failed to Plead Adequate Facts Demonstrating Sufficient Duration of Any Purported Criminal Enterprise Supposed to Have Involved Steve Haglind, Bassinger or Cahill.**

Not only has Integrity failed to adequately plead that Movants engaged in mail or wire fraud, it has also failed to allege that they were involved in a pattern of racketeering activity.  For Integrity's RICO claim to survive, it must demonstrate that Movants have engaged in a "pattern of racketeering."  *See* 18 U.S.C. § 1962(c).  This element exists "to prevent . . . ordinary commercial fraud from being transformed into a federal RICO claim."  *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991) (quotation omitted).  There is thus a temporal element of a RICO claim by which a plaintiff must demonstrate continuity of racketeering acts.  *See Crest Constr.*, 660 F.3d at 355-58.  Such a pattern of racketeering can be either "open-ended" or "close-ended."  *See id.*

"[T]he requirement of continuity over a closed period is not met when the predicate acts extend less than a year."  *Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1215 (8th Cir. 1993) (purported fraudulent scheme lasting between ten and eleven months did not constitute close-ended pattern of racketeering); *see also Crest Constr.*, 660 F.3d at 359 (no close-ended continuity in purported pattern of racketeering lasting less than seven months).  There can be no close-ended pattern of racketeering here since Integrity cannot in good faith allege that the purported fraudulent acts lasted longer than a year.  (Compl. ¶ 218 (alleging that the

"sophisticated Lazy Deuce fraud scheme . . . [was] conducted over at least the better part

of a year"). Indeed, the purportedly fraudulently induced loans were made over the

course of a mere six and a half months. (*Id.* at ¶ 57.)

Open-ended fraudulent schemes are those involving "past conduct that by its

nature projects into the future with a threat of repetition." *H.J., Inc. v. Nw. Bell Tel. Co.*,

492 U.S. 229, 239 (1989). Integrity has failed to allege facts sufficient to demonstrate

open-ended racketeering activity with regard to Movants. Integrity makes several

allegations regarding the penchant of Baldwin, Delahanty and Hagen to participate in

financial fraud and/or form and operate entities similar to Lazy Deuce. (*See*, *e.g.*, Compl.

¶¶ 145-146, 220-221.) However, the only perfunctory allegation that could even

arguably implicate Movants in such a purportedly open-ended pattern of racketeering

activity states merely that Bassinger, Cahill and Steve Haglind "continue[] to operate a

labyrinthine structure of LLCs" – i.e., conduct that in no way amounts to racketeering.

(*Id.* at ¶ 222.) The threadbare allegations of wrongdoing by Movants simply cannot be

said to demonstrate a likelihood that Movants will operate any kind of fraudulent scheme

going forward. (*See id.* at ¶¶ 216-225.)

### 3. Integrity Has Failed to Plead with Sufficient Particularity the Purported Roles that Steve Haglind, Bassinger and Cahill Had Vis-à-Vis any Alleged Criminal Enterprise.

Statute provides that it is illegal for a person to conduct the affairs of an

"enterprise" through a pattern of racketeering. 18 U.S.C. § 1962(a)-(c). The existence of

an enterprise is a separate element of a RICO claim that must be proved. *Bennett v. Berg*,

685 F.2d 1053, 1060 (8th Cir. 1982) (citing *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)).

An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Integrity has failed to adequately plead the existence of an "enterprise."  (*See* Compl. ¶¶ 216-225.)

The Complaint contains three allegations relating to an "enterprise," none of which purports to demonstrate of what the alleged enterprise consists:

> 217.    To further the fraudulent schemes described in the complaint, Defendants continuously controlled and operated an enterprise engaged in a pattern of racketeering activity, including wire fraud and mail fraud.

> 218.    Such enterprise and pattern of activity includes the participation of each of Lazy Deuce, Baldwin, Johnson, Delahanty, Kenneth Haglind, Steve Haglind, Todd Bassinger, and Jeff Cahill, as described in detail above, in the sophisticated Lazy Deuce fraud scheme itself, conducted over at least the better part of a year, and the false statements and fraudulent omissions each made in furtherance of it . . . .

> 223.    Such enterprise was engaged in and affected interstate commerce.

(Compl. ¶¶ 217-218, 223.)

On first gloss, one might believe that Lazy Deuce itself is the purported enterprise, but Integrity's pleading conclusively rules out such an interpretation by indicating that "Defendants," of which Lazy Deuce is one, purportedly "operated" the enterprise.  (*Id.* at ¶¶ 217-218); *see also Bennett*, 685 F.2d at 1061-62 (discussing the importance of pleading the existence of an enterprise distinct from a purportedly culpable person and holding that an entity cannot be both a RICO enterprise and a person responsible for conducting the affairs of that enterprise).  As Integrity's RICO claim is pleaded, it is

impossible to determine exactly who or what is supposed to comprise the enterprise.[10]

(*See* Compl. ¶¶ 217-218, 233.)  The insufficiency of Integrity's pleading is further

demonstrated by the fact that it appears to use the terms "enterprise" and "pattern of

racketeering" interchangeably.  (*See id.* at ¶¶ 218 ("such enterprise and pattern of activity

includes"), 223-224); *see also Turkette*, 452 U.S. at 583 (noting that the enterprise and

pattern of racketeering are separate elements).  In any event, the existence of an

enterprise has not been pleaded with specificity sufficient for Integrity's claim to survive

a motion to dismiss.  (*See* Compl. ¶¶ 217-218, 223); *see also Iqbal*, 556 U.S. at 678-79.

### 4.    Integrity Has Failed to Adequately Plead that Movants Controlled an Enterprise.

Even if Integrity had sufficiently pleaded the existence of an enterprise, it would

likewise have to prove that Movants "controlled" the enterprise to establish RICO

liability.  18 U.S.C. § 1962(c); *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)

(concluding that "[i]n order to 'participate, directly or indirectly, in the conduct of such

enterprise's affairs,' one must have some part in directing those affairs.")  Since Integrity

has not adequately pleaded the existence of an enterprise, it has likewise failed to

establish who directed the affairs of such enterprise, let alone that Movants directed such

affairs.  (*See* Compl. ¶¶ 216-225.)

---

[10] Some possibilities, although not clearly set forth, include the "labyrinthine structure of LLCs" alleged in Paragraph 222 of the Complaint (*see* Compl. ¶ 222; *see also id.* at ¶¶ 145-146), and the purported Ponzi scheme alleged in Paragraphs 122-136. (*See id.* at ¶¶ 122-136 (alleging a "Ponzi scheme" between Lazy Deuce, Semita and Dblaine Capital)); *see also Bennett*, 685 F.2d at 1061-62 ("appellants may intend to place the residential community in the role of the RICO 'enterprise' . . . . This allegation, however, has not been clearly set forth.")

III.   **INTEGRITY'S FRAUDULENT TRANSFER CLAIM AGAINST MOVANTS FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.**

Integrity's fraudulent transfer claim is a mere regurgitation of several elements contained in Sections 513.44 and 513.45 of the Minnesota Uniform Fraudulent Transfer Act ("MUFTA").  (*See* Compl. ¶¶ 226-229 (citing Minn. Stat. § 513.44(a)(1)-(2).)  Like other claims in Integrity's Complaint, its fraudulent transfer claim must meet the heightened pleading requirements of Rule 9(b) to survive a motion to dismiss.  *Kranz v. Koenig*, 240 F.R.D. 453, 455 (D. Minn. 2007) (citing *NW. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 726 (8th Cir. 2003) ("the Eighth Circuit Court of Appeals has indicated that Rule 9(b) applies to fraudulent conveyance claims under the Uniform Fraudulent Transfer Act.").  Integrity's claim fails to meet this heightened pleading requirement.

In its fraudulent transfer claim, Integrity repeatedly alleges that "Defendants transferred property . . . ."  (Compl. ¶¶ 227-229.)  As a preliminary matter, pleading that "Defendants" committed fraudulent acts is not enough to satisfy Rule 9(b)'s heightened pleading standards.  *See Murr Plumbing*, 48 F.3d at 1069.  Furthermore, Integrity's fraudulent transfer claim alleging all Defendants, including Movants, are transferors is inherently inconsistent with allegations scattered throughout the remainder of its Complaint alleging that the Defendants who supposedly "transferred" assets were Lazy Deuce, by means of loans to Dblaine Capital, and Semita, by means of payments back to Lazy Deuce.  (*See*, *e.g.*, Compl. ¶¶ 100, 103, 106, 109-112.)  Apart from the rote recitation of statutory elements contained in the fraudulent transfer claim, there are no

allegations in the Complaint that <u>Movants</u> fraudulently transferred assets.  (*See*, *generally*, Compl.)

There are similarly no allegations that Movants were the transferees of fraudulent transfers.  (*See* Compl.)  Rather, the primary alleged transferees include Dblaine Capital (initial transferee), Semita (subsequent transferee), and Lazy Deuce (tertiary transferee).  (*See*, *e.g.*, *id.* at ¶¶ 100, 103, 106, 109-112.)  There is an allegation that Baldwin took $125,000 from Semita as a subsequent transferee.  (*Id.* at ¶ 117.)  There is an allegation that Johnson was a subsequent transferee who "took a personal loan of $100,000 from Lazy Deuce, which was later forgiven . . . ."  (*Id.* at ¶ 118.)  There are also perfunctory allegations which may be read to suggest that Kenneth Haglind and Baldwin received fraudulently transferred funds by means of their salaries.  (*Id.* at ¶ 120.)  In contrast, there are <u>no</u> allegations that any of Movants were the transferees of fraudulently transferred funds.  (*See* Compl.)[11]

That the Complaint does not adequately allege that Movants were either transferors or transferees of voidable transfers is significant.  The MUFTA only allows for judgment to be entered against "(1) the first transferee of the asset or the person for whose benefit the transfer was made; or (2) any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee."  Minn. Stat.

---

[11] There is one perfunctory allegation that "Lazy Deuce was also used to conduct a variety of transactions benefiting several of Johnson's other companies, in which Steve Haglind, Bassinger, and Cahill were involved."  (Compl. ¶ 119.)  The Complaint stops short of listing the involved companies, or even one example of such a transfer or how Movants benefited, and thus fails to meet Rule 9(b)'s particularity requirement.  *See Tuttle*, 118 F. Supp. 2d at 963.

§ 513.48.  Integrity's allegations against Movants simply do not demonstrate with

particularity that Movants may be liable for fraudulent transfer.

## IV.   INTEGRITY HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST MOVANTS, WHO WERE STRANGERS TO ANY AGREEMENT ALLEGED IN THE COMPLAINT.

Integrity does not allege that Movants were party to any contract with, or breached

any contract with, Integrity.  (*See* Compl. ¶¶ 155-156 (alleging that <u>Lazy Deuce</u> entered

into and breached contracts)); *see also* Minn. Stat. § 322B.303, subd. 1 ("a member,

governor, manager, or other agent of a limited liability company is not, merely on

account of this status, personally liable for the acts, debts, liabilities, or obligations of the

limited liability company."); *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 989 (D.

Minn. 2006) ("Under Minnesota law, a breach of contract claim consists of four

elements:  (1) a valid contract; (2) performance by the plaintiff of any conditions

precedent; (3) a material breach of the contract by the defendant; and (4) damages.").

Nevertheless, Integrity asserts a breach of contract claim against Steve Haglind,

Bassinger and Cahill under the theory that "Lazy Deuce is a mere facade for their

fraudulent scheme, meriting piercing the corporate veil."  (Compl. ¶ 157.)  Integrity

likewise asserts that "because the activities of Taurus Holdings and Lex Acquisitions

Group were presented by Johnson as those of Lazy Deuce in flagrant disregard of the

corporate form," Lazy Deuce's corporate veil should be pierced to hold Lex and Taurus

liable for Lazy Deuce's breach of Lazy Deuce's contract.  (*Id.* at ¶ 158.)  Integrity's veil

piercing allegations are bizarrely misguided.

As a preliminary matter, Minnesota courts will in certain circumstances "disregard the corporate entity under the doctrine of 'piercing the corporate veil,' holding shareholders personally liable for corporate obligations."  20A(2) Brent A. Olson Minnesota Practice § 36:11 (2012 ed.) (emphasis added); *see also Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., Inc.*, 283 N.W.2d 509, 512 (Minn. 1979) (discussing when "alter ego" or "instrumentality" theory can be used "to impose liability on an individual shareholder.") (emphasis added); *Tom Thumb Food Markets, Inc. v. TLH Props., LLC*, No. C9-98-1277, 1999 WL 31168, at *3 (Minn. Ct. App. Jan. 26, 1999), *review denied* (Minn. Apr. 20, 1999) ("Courts will pierce the corporate veil if (1) an entity ignores corporate formalities and acts as the alter ego or instrumentality of a shareholder and (2) the liability limitations of the corporate forum results in injustice or is fundamentally unfair.") (emphasis added).  Integrity has failed to allege that any of Movants are owners/members, or even employees, of Lazy Deuce such that they should or could be held to account for its purported breach of contract.  (*See* Compl. ¶¶ 10-12 (alleging only that Haglind, Bassinger and Cahill were officers/board members of Lazy Deuce)); *see also* Minn. Stat. § 322B.03, subd. 30 (defining "member" as "a person reflected in the required records of a limited liability company as the owner of some governance rights of a membership interest in the limited liability company.").[12]

_____

[12] Not only is the Complaint devoid of allegations regarding Movants being members or employees of Lazy Deuce, but the materials appended to the Complaint likewise fail to support Integrity's vague claim that Movants were involved in the business.  (*See* Compl. at Exs.)

Even if this were one of the rare circumstances where the corporate veil were to be pierced to hold a mere officer or governor liable on the basis of an alter ego theory, the Complaint fails to allege that Lex and Taurus – limited liability companies – are, or even could be, officers/governors of Lazy Deuce.  (*See* Compl. ¶¶ 4-5); *see also* Minn. Stat. § 322B.03, subd. 24 (defining "governor" as "a <u>natural person</u> serving on the board of governors") (emphasis added).  Indeed, the Complaint fails to allege that Lex and Taurus exercised <u>any</u> control over Lazy Deuce.  (*See*, *generally*, Comp.)  The only purported basis for applying the alter ego theory to Lex and Taurus is an allegation that their activities, unrelated to the contract claimed here, "were presented by Johnson as those of Lazy Deuce in flagrant disregard for the corporate form . . . ."  (*Id.* at ¶ 151; *see also id.* at ¶¶ 98, 148, 158 (all making virtually verbatim allegations).)[13]  Indeed, Integrity did not even attempt to allege that the *Victoria Elevator* factors, which outline the test for when alter ego liability may attach under Minnesota law, apply in the context of Lex and Taurus.  (*Id.* at ¶ 149); *see also Victoria Elevator*, 283 N.W.2d at 512.  There can thus be no basis to hold those entities liable for Lazy Deuce's breach of contract.  *See Iqbal*, 556 U.S. at 678-79.

---

[13] Only 7 Paragraphs of 229 in the Complaint even mention Lex or Taurus. (Compl. ¶¶ 4-5, 21(a), 98, 148, 151, 158), and the only substantive allegation purportedly leveled against them is the repeated allegation that principals of Lazy Deuce, in their capacities as such, passed off Lex and Taurus business activity as that of Lazy Deuce. (Compl. ¶¶ 21(a), 98, 148, 151, 158.)  In other words, <u>the Complaint does not allege that Lex or Taurus partook in any wrongdoing</u>.  Even if the repeated allegation regarding representations of Lazy Deuce principals could be construed as misconduct attributable to Lex and Taurus, which it cannot, repeating one conclusory allegation several times in a Complaint cannot possibly meet the pleading standards required to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (a complaint does not suffice if it tenders naked conclusions devoid of further factual enhancement).

With regard to Steve Haglind, Bassinger and Cahill, too, the Complaint fails to adequately plead entitlement to alter ego relief.  The Complaint alleges only in the most perfunctory manner that the Individual Movants used Lazy Deuce as a mere instrumentality for their individual dealings.  (*See* Compl. ¶¶ 147, 150, 153; *see also Victoria Elevator*, 283 N.W.2d at 512.  Indeed, in Integrity's breach of contract claim, it alleges that Steve Haglind, Bassinger and Cahill should be liable for breach of contract on an alter ego theory not because they are alter egos of Lazy Deuce, but "because Lazy Deuce is a mere facade <u>for their fraudulent scheme</u> . . . ."  (Compl. ¶ 157 (emphasis added).)  Alter ego liability is used to find members of limited liability companies liable for the actions of the company, not to find "schemes" liable.  *See Tom Thumb Food Markets*, 1999 WL 31168, at *3.

Other allegations regarding the purported applicability of alter ego liability to Steve Haglind, Bassinger and Cahill are likewise unavailing.  For example, Integrity lists the *Victoria Elevator* factors, "[o]n information and belief," by rote in an attempt to get the Individual Movants on the hook for Lazy Deuce's debts.  (Compl. ¶ 149; *see also id.* at ¶ 150.)  This is just the kind of formulaic recitation of elements devoid of further factual enhancement that cannot survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 570; *see also Johnson v. Evangelical Lutheran Church of Am.*, No. 11-23, 2012 WL 2370286, at *10 (D. Minn. Mar. 9, 2012) ("a number of these paragraphs again simply provide mere legal conclusions and do not constitute specific factual allegations supporting Plaintiffs' alter ego theory."); *Maurice Sunderland Architecture v. Simon*, No. 4-94-122, 1994 WL 1091851, at *2 (D. Minn. Apr. 6, 1994)

(dismissing complaint that "allege[d] only that [defendants] control and are alter egos of the corporate defendants" because "conclusory legal allegations need not be construed as true."). Although there are conclusory allegations that the Individual Movants used Lazy Deuce in a manner "designed to profit themselves at the expense of Integrity Dominion" (Compl. ¶¶ 147, 153), there is no specific allegation anywhere in the Complaint regarding exactly how the Movants were supposed to have benefited from any purported disregard of the corporate form. (*See*, *generally*, *id.*); *see also Victoria Elevator*, 283 N.W.2d at 512 (noting that the purpose of imposing alter ego liability is so that an individual cannot "escape liability because he does his business under a corporate form," where "he does not deserve" that advantage); *SICK, Inc. v. Motion Control Corp.*, No. 01-1496, 2003 WL 21448864, at *9 (D. Minn. June 19, 2003) (dismissing breach of contract claim premised on alter ego doctrine in part because plaintiff "does not allege or show that [purported alter ego's] existence is intended to hide [defendant] or its dealings."). The conclusory nature of Integrity's alter ego allegations is even more striking and unforgivable in light of the fact that it had nearly a year to discover facts relating to its action prior to seeking leave to file its Third Amended Complaint. (*See* Scheduling Order.) The allegations in the Complaint are simply too flimsy a basis to impose alter ego liability upon Movants. *See Johnson*, 2012 WL 2370286, at *11 (holding that a complaint failed to state a plausible claim for alter ego liability where it offered "mere conclusory allegations" regarding the *Victoria Elevator* factors).[14]

_____

[14] To the extent that Integrity alleges that alter ego theory may be used to find Movants liable for any other claim alleged in the Complaint (*see*, *e.g.*, Compl. ¶ 214

**V.      INTEGRITY'S FRAUD CLAIM FAILS TO STATE A CLAIM ON WHICH
         RELIEF CAN BE GRANTED AGAINST MOVANTS.**

The elements of fraudulent misrepresentation under Minnesota law are: "a false

representation of past or present material fact that is susceptible to knowledge; the

representor knew that the fact was false or asserted it as her own knowledge without

knowing whether it was true or false; the representor intended that the plaintiff act on the

statement; the plaintiff, in fact, acted in justifiable reliance on the statement; the plaintiff

suffered damage; and the statement was the proximate cause of this damage." *Piekarski*

*v. Home Owners Sav. Bank, F.S.B.*, 956 F.2d 1484, 1493 (8th Cir. 1992).  Integrity does

not allege that Steve Haglind, Bassinger or Cahill made affirmative representations, but

instead, and conveniently, alleges that they committed fraud by omission.  (Compl.

¶¶ 190-207.)

"A failure to disclose a material fact can constitute misrepresentation only if the

defendant has a duty to disclose." *Piekarski*, 956 F.2d at 1493.  "As a general rule, one

party to a transaction has no duty to disclose material facts to the other." *Taylor Inv.*

*Corp. v. Weil*, 169 F. Supp. 2d 1046, 1064 (D. Minn. 2001) (emphasis added).  As a

preliminary matter, none of the Individual Movants was a party to any transaction

involving Integrity.  To the contrary, the Complaint alleges that Integrity formed its loan

agreements with Lazy Deuce and negotiated exclusively with Baldwin, Johnson and

Delahanty, as principals of Lazy Deuce.  (*See*, *e.g.*, Compl. ¶¶ 19, 57-58, 161-165.)

---

(alleging that Steve Haglind, Bassinger and Cahill are liable "for the false representations
and fraudulent omissions made on behalf of Lazy Deuce, because Lazy Deuce is a mere
facade for their scheme, meriting piercing of the corporate veil"), those allegations
likewise fail for the reasons discussed herein.

Even if the Individual Movants were parties to the transactions at issue in the

Complaint, there are only three exceptions to the general rule that such parties have no

duty to disclose material facts:  "(1) when a confidential or fiduciary relationship exists;

(2) when disclosure is necessary to clarify misleading information already disclosed; or

(3) when one party has 'special knowledge' of material facts to which the other party

does not have access."  *Taylor Inv.*, 169 F. Supp. 2d at 1064.  Integrity has not alleged

that Steve Haglind, Bassinger or Cahill disclosed any information nor that they were

obligated to disclose information necessary to clarify any misleading information that

they supposedly disclosed.  (*See* Compl. ¶¶ 190-207.)  Rather, they suggest that a duty

arose on the basis of allegations of fiduciary duty and "special knowledge."  (*See id.*)

Integrity has failed to plead facts sufficient to demonstrate that Movants had

fiduciary duties to Integrity.  (*See* Compl. ¶¶ 193-194, 200-201, 206-207.)  Officers and

directors of corporations "become fiduciaries of the corporate assets for the benefit of

creditors" when a corporation is insolvent or on the verge of insolvency.  *Snyder Elec.*

*Co. v. Fleming*, 305 N.W.2d 863, 869 (Minn. 1981).[15]  The breadth of an officer's or

director's/governor's duty to creditors in that circumstance, though, is limited to the

officer/director/governor not enabling himself "to recover a greater percentage of his debt

than general creditors of the corporation with otherwise similarly secured interests."  *See*

*id.*; *see also Helm Fin. Corp. v. MNVA R.R., Inc.*, 212 F.3d 1076, 1081 (8th Cir. 2000)

("The fiduciary duty of an insolvent corporation's directors and officers to preserve and

---

[15] The Individual Movants deny that they are, or ever were, officers or directors/governors of Lazy Deuce, but recognize for purposes of this motion that the Court must accept as true well-pleaded allegations to the contrary.

protect the assets of the corporation does not extend beyond the prohibition against self-dealing or preferential treatment."); *St. James Capital Corp. v. Pallet Recycling Assocs. of N. Am., Inc.*, 589 N.W.2d 511, 514-15 (Minn. Ct. App. 1999) (discussing how the duty of officers and directors of insolvent corporation to creditors is limited to not preferring themselves as creditors at other creditors' expense).  Since there are no allegations in the Complaint that Steve Haglind, Bassinger or Cahill were creditors of Lazy Deuce, let alone creditors who preferred themselves to other creditors, Integrity has failed to adequately plead a fiduciary duty that could serve as a basis for a purported duty to disclose.  (*See* Compl.)

Integrity has likewise failed to plead with requisite specificity that Movants had any "special knowledge" that would have created a duty to disclose (even assuming that Integrity had alleged that Movants were parties to the loan transactions).  Integrity makes several perfunctory allegations regarding Steve Haglind having control over Lazy Deuce's checkbook; regarding Bassinger indicating that "pass-through" entities are common; regarding Steve Haglind, Bassinger and Cahill attending meetings of Lazy Deuce's Board of Directors and/or Advisory Board, and so forth.  (*See* Compl. ¶¶ 123-127, 129-130, 133-135, 137-138, 141.)[16]  As a result of such contacts with Lazy Deuce, Integrity argues, the Individual Movants knew "essential elements of the Lazy Deuce-Dblaine scheme . . . ."  (*Id.* at ¶¶ 123; *see also id.* at ¶¶ 127, 130, 137.)  Apart from these

_____

[16] It is noteworthy that although Integrity alleges that Lazy Deuce had a "board of directors" consisting of Baldwin, Johnson, Cahill, and Bassinger (*see* Compl. ¶ 134), limited liability companies such as Lazy Deuce have governors and not directors.  *See* Minn. Stat. § 322B.606, subd. 1.

general allegations, Integrity fails to allege with particularity what it is that the Individual Movants were supposed to have known or how, exactly, the Individual Movants reaching out to create their first contact with Integrity would have affected its investment strategy. (*See*, *generally*, Compl.)  Conclusory allegations of the variety contained in Integrity's Complaint are simply not enough to demonstrate with particularity that the Individual Movants had special knowledge that created a duty to disclose.  *See Boubelik v. Liberty State Bank*, 553 N.W.2d 393, 400 (Minn. 1996), *superseded by statute on other grounds as recognized by Ly v. Nystrom*, 615 N.W.2d 302, 309 (Minn. 2000) (holding that allegations in borrowers' complaint that lender had special knowledge relevant to loan failed to support claim of fraud by omission).

Even in the unlikely event that the Court were to conclude that Integrity has adequately pleaded that Steve Haglind, Bassinger and/or Cahill had a duty to disclose, Integrity has not adequately pleaded two other crucial elements of its claim – i.e., that it reasonably relied on the Individual Movants' omissions, or that the Individual Movants' omissions were the proximate cause of Integrity's loss.  *See Piekarski*, 956 F.2d at 1493 (outlining the elements of fraud).  In contrast, the Complaint is replete with allegations regarding Integrity's reliance on affirmative statements and assurances provided by Baldwin, Johnson and Delahanty as a proximate cause of Integrity's damages.  (*See* Compl. ¶¶ 20-116.)  The Complaint alleges that Integrity's principals repeatedly and specifically sought assurances from Defendants other than Movants, which assurances were given to induce Integrity's investment in Lazy Deuce.  (*See id.*)  When it comes to pleading reasonable reliance on Movants' alleged omissions, or Integrity's purported

damages being proximately caused by Movants' alleged omissions, however, Integrity's claims are devoid of any support other than conclusory allegations.  (*See* Compl. ¶¶ 208-209, 215.)  To the extent that fraud by omission is even alleged against Steve Haglind, Bassinger and Cahill, it merely parrots the allegations alleged against their Co-Defendants.  (*See id.* at ¶¶ 166-207.)  The particular circumstances regarding Integrity's "reasonable" reliance on <u>Movants</u>' omissions and how those particular omissions, as distinct from the affirmative misstatements of other parties, caused any harm is virtually absent from Integrity's Complaint.  (*See*, *generally*, Compl.)  As a result, the Complaint fails to meet the heightened pleading requirements of Rule 9(b) and thus fails to state a claim for fraud against Movants on which relief can be granted.  *See Joshi*, 441 F.3d at 556; *Tuttle*, 118 F. Supp. 2d at 963.[17]

## CONCLUSION

For the foregoing reasons, Defendants Taurus Holdings, LLC, Lex Acquisition Group, LLC, Steve Haglind, Todd Bassinger and Jeff Cahill respectfully request that the Court dismiss with prejudice the Complaint as to them in its entirety.

ANTHONY OSTLUND BAER
& LOUWAGIE P.A

Dated:  March 14, 2013                    By: *s/ Steven M. Phillips*

---

[17] As a latch ditch effort to put the Individual Movants on the hook for liability associated with alleged fraudulent statements made by other parties, Integrity perfunctorily tacks to the end of its fraud claim allegations that Movants "aided and abetted" fraudulent conduct or otherwise took part in a "civil conspiracy."  (Compl. ¶¶ 210-213.)  Again, though, such allegations are just the kind of conclusory recitation of elements devoid of further factual enhancement that is not enough to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 570.

Steven M. Phillips (#0177659)
Steven C. Kerbaugh (#0390429)
90 South Seventh Street, Suite 3600
Minneapolis, MN  55402
Telephone:  612-349-6969
sphillips@aoblaw.com
skerbaugh@aoblaw.com

**ATTORNEYS FOR TAURUS HOLDINGS,
LLC, LEX ACQUISITION GROUP, LLC,
STEVE HAGLIND, TODD BASSINGER,
AND JEFF CAHILL**