**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Integrity Dominion Funds, LLC,

                     Plaintiff,

v.

Lazy Deuce Capital Co., LLC, et al.,

                     Defendants,

v.

Jeff Hagen, et al.,

                     Third-Party Defendants.

Civ. No. 12-254 (RHK/JSM)
**MEMORANDUM OPINION AND ORDER**

---

Lucas J. Thompson, Aaron D. Hall, Mark Santi, Twin Cities Law Firm LLC, Minneapolis, Minnesota, for Plaintiff.

Robert M. Gardner, Gardner Law Office, Burnsville, Minnesota, for Defendant and Third-Party Plaintiff Brent Johnson.

---

**INTRODUCTION**

In this action, Plaintiff Integrity Dominion Funds, LLC ("Integrity") alleges that Lazy Deuce Capital Co., LLC ("Lazy Deuce"), which defaulted on $1.5 million of Integrity's loans, and Lazy Deuce's officers, including Defendant Brent Johnson, were engaged in a fraudulent investment scheme. Integrity now moves for default judgment against Lazy Deuce and Johnson moves for summary judgment on Integrity's claims. For the reasons that follow, the Court will grant Integrity's Motion and decline to exercise supplemental jurisdiction over the remaining claims.

## BACKGROUND

Integrity is a small private investment fund operated by three principals, Thomas Barrett, George Bakalov, and H. Chris Poole.  Lazy Deuce is an investment company that was owned and operated by Defendants Brent Johnson, Kenneth Haglind, Brian Baldwin, and Frank Delahanty III.

In October 2010, Lazy Deuce approached Integrity about short-term, high-interest investment opportunities.  Lazy Deuce described itself as an entity providing "nontraditional financing" to parties with "unusual collateral."  Beginning November 2010, Integrity extended Lazy Deuce 30- and 90-day loans with monthly interest rates between 3.5% and 10%.  Lazy Deuce timely repaid the first nine loans in full.  But in May 2011, it defaulted on three of Integrity's loans, totaling $1.5 million in principal: (1) a $200,000 90-day loan made on March 28, 2011, at 3.5% monthly interest; (2) a $700,000 90-day loan made on April 21, 2011, at 4% monthly interest; and (3) a $600,000 30-day loan made on May 26, 2011, at 4% monthly interest.  (Barrett Aff. ¶ 5 & Ex. A.)  Lazy Deuce timely paid the first two months of interest on the two 90-day loans, but defaulted on the final payment of principal and interest for all three.

In 2012, Integrity commenced the instant action against Lazy Deuce, Johnson, Baldwin, and eight other individuals and related entities, asserting a single federal claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO"), and several state-law claims, including breach of contract, fraudulent misrepresentation, and fraudulent transfer.  Integrity has since amended its Complaint three times.  In response to the latest Complaint, several Defendants asserted cross-

claims, third-party claims, and moved to dismiss. Before the Court had decided their Motions, all of the Defendants settled with Integrity (and dismissed their cross-claims), except Johnson, Baldwin, and Lazy Deuce. Of those three Defendants, only Johnson had moved to dismiss, and the Court granted his Motion in part, dismissing the federal RICO claim against him. At that time, the Court decided to exercise supplemental jurisdiction over the remaining state-law claims against Johnson to prevent Integrity from litigating the case simultaneously against Lazy Deuce and Baldwin in federal court and against Johnson in state court. However, Baldwin has since settled with Integrity, which leaves pending only (1) Integrity's claims against Johnson and Lazy Deuce, and (2) Johnson's and Lazy Deuce's state-law cross-claims and third-party claims. Integrity now moves for default judgment or, alternatively, summary judgment against Lazy Deuce, and Johnson also moves for summary judgment. The Motions have been fully briefed, the Court heard oral argument on January 29, 2014, and the Motions are now ripe for disposition.[1]

## ANALYSIS

I. **Integrity's Motion for Default Judgment**

Integrity moves for entry of default and default judgment against Lazy Deuce for its failure to defend itself in this action. Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Although Rule 55 contemplates the Clerk entering default first, the Court has discretion to direct the entry of default and default judgment

---

[1] Lazy Deuce did not respond to Integrity's Motion, nor did it appear at oral arguments.

under Rule 55(b) simultaneously.  See Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 855 (8th Cir. 1996); e.g., Operating Eng'rs Local No. 49 Health & Welfare Fund v. A.B. Envt'l Corp., Civ. No. 06-4470, 2007 WL 1888451, at *1 (D. Minn. June 29, 2007) (Schiltz, J.).

Lazy Deuce was initially represented in this action by counsel Brian McMahon and timely answered Integrity's First and Second Amended Complaints in May and August of 2012, respectively.  But in November 2012, Kenneth Haglind resigned as CEO, leaving McMahon unsure who—if anyone—had authority to act on Lazy Deuce's behalf, as all of its other principals also had resigned.  McMahon indicated to the Court in an April 2013 hearing that he had "no one to take direction from" since Haglind's resignation and he had not filed an Answer to Integrity's Third Amended Complaint on behalf of Lazy Deuce because he had been told "not to take any more action on behalf of the corporation."  (Doc. No. 93 at 32.)  At that same hearing, Johnson's counsel, Robert Gardner, described Lazy Deuce as "essentially defunct."  (Id. at 19.)  After McMahon's other clients (Frank Delahanty III and Semita Partners LLC) settled with Integrity in July 2013, Gardner substituted as counsel for Lazy Deuce.

On September 20, 2013, more than six months after Lazy Deuce had failed to answer or move to dismiss the Third Amended Complaint (due February 7, 2013) or respond to discovery requests (due March 27, 2013), Integrity applied for entry of default against it.  In response, Gardner filed an Answer (as well as cross- and third-party claims) on behalf of Lazy Deuce and the clerk denied the application.  Gardner then served Integrity with *unexecuted* discovery responses on behalf of Lazy Deuce and Integrity

moved to compel *executed* Answers to its Interrogatories. Gardner opposed the Motion, claiming his other client, Johnson, was authorized to act for Lazy Deuce and would execute the Answers. However, this claim of authority was belied by a "Satisfaction and Release" Johnson signed in June 2011 severing his ties with Lazy Deuce (and by McMahon's and Gardner's statements in the April 2013 hearing). Accordingly, Magistrate Judge Mayeron determined there was no agent or officer who could sign the Interrogatories for Lazy Deuce and denied the Motion to Compel as moot. (Doc. No. 130.) Unsurprisingly, nothing has been filed on Lazy Deuce's behalf since and it has not opposed the instant Motion or entered an appearance at oral argument.

As Lazy Deuce has failed to defend itself in this action since at least October 2013 (and arguably since November 2012, when Haglind resigned), the Court concludes that the entry of default against it is appropriate. See Fed. R. Civ. P. 55(a) (authorizing entry of default for failure to defend); Ackra, 86 F.3d at 856 (affirming district court's entry of default and default judgment against a corporation for failure to defend when it did not respond to discovery orders or attend conferences scheduled by the court after its counsel had withdrawn and the court had advised it to obtain new counsel).

Integrity seeks default judgment in the amount of $3,368,133.33: $1,500,000 in principal plus $1,868,133.33 in interest. Integrity has proved Lazy Deuce defaulted when the principal and final interest payments came due on each of its final three loans. The promissory note for each loan provides that "[a]ny unpaid principal will continue to accrue interest . . . until paid in full" at the monthly rate of 3.5% for the first loan and 4%

for the last two loans. (See, e.g., Barrett Aff. Doc. No. 139, Ex. B.) The table below summarizes the principal and interest owed as of January 29, 2014:

| Loan # | Principal Amount | Monthly Interest Rate | Default Date | Days since | 30-day periods | Total Interest Due | Total Due |
|---|---|---|---|---|---|---|---|
| 2011-021 | $200,000 | 3.5% | 5/29/11 | 960 | 32 | $224,000 | $424,000 |
| 2011-024 | $700,000 | 4% | 6/22/11 | 937 | 31.2 | $874,533.33 | $1,574,533.33 |
| 2011-033 | $600,000 | 4% | 5/27/11 | 962 | 32.1 | $769,600 | $1,369,600 |

(See id. ¶¶ 5–10; Exs. A, B.)

Although Lazy Deuce has not opposed the Motion for Default Judgment, Johnson has. Johnson challenges the amount of the judgment, contending it should be offset by Integrity's settlements with his co-Defendants.[2] As the party invoking this affirmative defense, Johnson has the burden of persuasion and he has utterly failed to meet it. In his two-sentence argument in opposition to the Motion, Johnson does not provide the Court with *any* authority for diminishing the requested judgment. "[I]t is not the Court's function to conduct research . . . or make a party's argument for [him]." Cohen v. Mortgage Elec. Registration Sys., Inc., Civ. No. 08-1394, 2009 WL 4578308, at *4 (D. Minn. Dec. 1, 2009) (Montgomery, J.) (quotation omitted). Accordingly, default judgment will be entered in the full amount of Integrity's contractual damages plus

---

[2] Integrity questions whether Johnson has standing to oppose its Motion for Default, as the Motion is against Lazy Deuce only. But Integrity has a breach-of-contract claim pending against Johnson in which it seeks to pierce the corporate veil and hold *Johnson* liable for *Lazy Deuce's* breach. As the amount of the judgment entered against Lazy Deuce could potentially be recovered from Johnson himself, he has a sufficient stake in the outcome of the Motion for the Court to consider his opposition.

reasonable costs and attorneys' fees.[3] (See, e.g., Barrett Aff. (Doc. No. 139), Ex. B ("Borrower promises to pay all costs of collection of this Note, including, but not limited to, attorneys' fees paid or incurred by the Lender on account of such collection.").)

## II. Subject-Matter Jurisdiction

As the parties in this matter are not completely diverse, the Court's subject-matter jurisdiction in this action is premised on the existence of a federal claim—namely, Integrity's RICO claim. (See Compl. ¶ 2.) Jurisdiction over the state-law claims, cross-claims, and third-party claims exists solely by virtue of the supplemental-jurisdiction statute, 28 U.S.C. § 1367, which provides the court discretion to exercise jurisdiction over state-law claims forming part of the same "case or controversy" as federal claims. Upon entering default judgment against Lazy Deuce, only state-law claims will remain in this action. But where all federal claims have been dismissed prior to trial, the factors to be considered in deciding whether to exercise supplemental jurisdiction—judicial economy, convenience, fairness, comity, and predominance of state issues—typically militate against doing so. See 28 U.S.C. § 1367(c) (A court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); e.g., Johnson v. City of Shorewood, Minn., 360 F.3d 810,

---

[3] Alternatively, as Integrity has proved Lazy Deuce breached its contracts with Integrity by defaulting on the promissory notes, Integrity is entitled to this same relief under Rule 56.

819 (8th Cir. 2004). This case is no exception. While federal claims remained pending against Lazy Deuce and Baldwin, the Court exercised jurisdiction to avoid the waste and inconvenience of parallel lawsuits in state and federal court. (See Doc. No. 99, at 9.) Now that Baldwin has been dismissed and Lazy Deuce will be also, this reasoning no longer applies. Accordingly, the Court will dismiss the claims against Johnson (and his claims against others) without prejudice.[4]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

(1) Integrity's Amended Motion for Default Judgment (Doc. No. 137) is **GRANTED** and Integrity shall recover of Defendant Lazy Deuce Capital Co., LLC the sum of $3,368,133.33 plus reasonable costs and attorneys' fees;

(2) Integrity's remaining claims (see Doc. No. 53), Johnson's cross-claims and third-party claims (see Doc. No. 107), and Lazy Deuce's cross-claims and third-party claims (see Doc. No. 111) are **DISMISSED WITHOUT PREJUDICE** as the Court declines to exercise supplemental jurisdiction over them; and

---

[4] See 28 U.S.C. § 1367(d) ("The period of limitations for [such claims] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

(3)  Johnson's Motion for Summary Judgment (Doc. No. 127) is **DENIED AS MOOT**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  February 27, 2014

                                                  <u>s/Richard H. Kyle        </u>
                                                  RICHARD H. KYLE
                                                  United States District Judge